Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 06 2012, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PHYLLIS J. EMERICK**
Monroe County Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARLES HAZELBAKER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 53A05-1111-CR-636 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Teresa D. Harper, Judge
Cause No. 53C09-1009-FB-893

**July 6, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Charles Hazelbaker appeals following his conviction for Class C felony Incest[1] and the determination that he is a habitual offender. On appeal, Hazelbaker challenges the appropriateness of his eight-year executed sentence. We affirm.

## FACTS AND PROCEDURAL HISTORY

Hazelbaker lived with Michelle Schott from about 1982 to 1988, and their relationship produced five children, including A.H. A.H. was born on March 5, 1987. Hazelbaker had sporadic contact with A.H. during her childhood. However, both Hazelbaker and A.H. knew that Hazelbaker was A.H.'s biological father and A.H. "always called [Hazelbaker] dad." Tr. p. 89. In May of 2002, when A.H. was fifteen, A.H., who was experiencing emotional struggles as well as problems at home and school, moved in with Hazelbaker in hopes of having a normal father-daughter relationship.

Sometime in 2003, after A.H. turned sixteen, Hazelbaker attempted to engage A.H. in sexual intercourse. A.H. was scared and confused, but eventually agreed. Hazelbaker instructed A.H. not to tell anyone, but assured her that "it was a natural thing to do between a father and a daughter" and that "it was okay in the Bible." Tr. pp. 100-01. Hazelbaker instructed A.H. to lie about the nature of their relationship and told her that she would get into trouble if she revealed the nature of their relationship.

In September of 2007, A.H. gave birth to E.M.H. A.H. identified, and DNA testing revealed, that Hazelbaker was E.M.H.'s biological father. In order to continue to hide the nature of their relationship, Hazelbaker and A.H. told others that A.H. had conceived E.M.H.

---

[1] Ind. Code § 35-46-1-3 (2003).

after an unknown individual had raped her.

Hazelbaker and A.H.'s sexual relationship lasted for approximately seven years, ending in June of 2010. Hazelbaker and A.H. had sexual intercourse "so many" times that she could not remember. Tr. p. 100. During this period, C.H., Hazelbaker's younger daughter and A.H.'s half-sister, lived with Hazelbaker and A.H. On at least one occasion, C.H. saw Hazelbaker and A.H. "sleeping naked on the couch together." Tr. pp. 145-46. A.H. continued the sexual relationship because she was scared of Hazelbaker and thought she had no other choice.

On September 22, 2010, the State charged Hazelbaker with one count of Class B felony incest and one count of Class B felony sexual misconduct with a minor. On September 29, 2010, the State filed a notice of intent to seek habitual offender status. The State subsequently sought permission to amend the charging information to amend the incest charge to the level of Class C felony and dismissed the Class B felony sexual misconduct with a minor charge. A jury trial commenced on February 14, 2011, but was subsequently declared to be a mistrial. Hazelbaker's new trial was scheduled for October 24, 2011.

On October 26, 2011, following a three-day jury trial, the jury found Hazelbaker guilty of Class C felony incest. The jury also found that Hazelbaker was a habitual offender. On October 27, 2011, the trial court sentenced Hazelbaker to eight years of incarceration for the Class C felony incest conviction, enhanced by twelve years due to his habitual offender status. This appeal follows.

**DISCUSSION AND DECISION**

3

In arguing that his eight-year executed sentence is inappropriate, Hazelbaker contends that because his actions cannot be labeled as "one of the worst offenses," he should not have been sentenced to a maximum eight-year executed sentence.[2]  Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  The defendant bears the burden of persuading us that his sentence is inappropriate.  *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).  We cannot, however, agree that Hazelbaker's sentence is inappropriate.

With respect to the nature of his offense, Hazelbaker argues that the eight-year executed sentence is inappropriate because his actions do not constitute "one of the worst offenses."  Appellant's Br. p. 4.  While we may be able to imagine a worse factual pattern, the record demonstrates that Hazelbaker's actions were heinous.  Hazelbaker engaged in a seven-year sexual relationship with his biological daughter, A.H.  During this relationship, Hazelbaker convinced A.H. to lie to family and friends about the nature of their relationship.  Hazelbaker convinced A.H. to keep the nature of their relationship a secret because "nobody would think it was okay" although he assured A.H. that "it was okay in the Bible."  Tr. p. 100.  When A.H. became pregnant, Hazelbaker again convinced her to lie about the nature of

---

[2]  Hazelbaker does not challenge the twelve-year sentence enhancement imposed by the trial court for his habitual offender status.  As such, any argument relating to the twelve-year habitual offender enhancement is waived.  *See Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006) (providing that an issue known and available but not raised on appeal is waived).

their relationship and came up with a plan in which A.H. would claim that she became impregnated after being raped by some unknown individual. At sentencing, A.H. testified that she experienced confusion and mixed feelings about the sexual nature of her relationship with Hazelbaker. A.H. further testified that she continued the sexual relationship because she was scared of Hazelbaker. In imposing the maximum eight-year sentence, the trial court found as follows:

> However, I will make a finding of the heinous facts in this case, and a violation of trust that arises from those heinous, above and beyond those heinous facts, above and beyond that of a position of trust as a parent. This was a parent who had a child that wanted to develop a relationship with him and as is indicated by her testimony, by testimony of her mother, and by [Hazelbaker's] version in the presentence investigation report, at that point in time [A.H.] was having difficulty in her mother's home and was also apparently having some difficulty, some emotional difficulties. When she came to her father's house what she entered was in essence a hornet's nest. It does not make any difference to me who initiated a sexual nature to this offense. Mr. Hazelbaker was the father and as such he was in a supervisory position and he should have attempted to protect his daughter rather than take advantage of her in this way when she was emotionally disadvantaged at that point. So I make a finding of a particularized heinousness with regard to that.

Tr. pp. 344-45. We agree with the trial court's findings regarding the heinous nature of Hazelbaker's actions.

With respect to his character, Hazelbaker acknowledges that he has prior criminal convictions but argues that the eight-year executed sentence is inappropriate because, with the exception of the instant offense, he has led a law-abiding life for nearly a decade and his imprisonment would result in undue hardship on another daughter, C.H. Hazelbaker's criminal history includes felony convictions for armed robbery, attempted rape, forgery, and

5

non-support of a dependent child, as well as misdemeanor convictions for conversion, battery (twice), resisting law enforcement, and public intoxication. Hazelbaker's criminal history also includes numerous probation violations, and Hazelbaker was on unsupervised probation for his felony forgery conviction when he began having sexual relations with his daughter. While Hazelbaker claims to have been a law-abiding citizen for nearly a decade, this decade of so-called law-abiding behavior encompasses the seven-year period during which he engaged in an unlawful sexual relationship with A.H. As such, we are unpersuaded by Hazelbaker's claim that the remoteness of his prior criminal convictions reflects positively on his character.

In addition, we, like the trial court, are unconvinced that Hazelbaker's desire to support C.H. reflects positively on his character. The trial court considered Hazelbaker's claim regarding the alleged undue hardship C.H. would suffer if he received a maximum sentence but did "not give much weight" to the claim because Hazelbaker has a prior conviction for failing to support a dependent. Moreover, in light of the nature and circumstances of Hazelbaker's instant crime, we cannot say that C.H., who lived with Hazelbaker and A.H. and appears to have witnessed at least some of Hazelbaker's inappropriate contact with A.H., would suffer an undue hardship because of Hazelbaker's incarceration. One could reasonably argue that witnessing her father engage in inappropriate behavior with her half-sister would be much more harmful to C.H. than having to deal with the pecuniary consequences of Hazelbaker's incarceration.

Hazelbaker's depraved actions demonstrate that he took advantage of his daughter,

who wanted nothing more than to have a normal father-daughter relationship, by engaging her in a seven-year sexual relationship. Hazelbaker convinced A.H. to lie to family and friends about the nature of their relationship even though he assured her that their relationship was natural and would be "okay" in the Bible. Tr. p. 100. In light of the depraved and heinous nature of Hazelbaker's actions, we conclude that the trial court's imposition of an eight-year executed sentence is wholly appropriate.

The judgment of the trial court is affirmed.

VAIDIK, J., and CRONE, J., concur.